IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BILLY MITCHELL MOORE                                  PLAINTIFF

V.                                                                                            CIVIL ACTION NO.
                                                                                                                        1:09-CV-306-SA-SAA

MICHAEL J. ASTRUE,
Commissioner of Social Security                              DEFENDANT

## REPORT AND RECOMMENDATION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the applications of plaintiff Billy Mitchell Moore for period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act. As the parties have not consented to have a magistrate judge conduct all the proceedings in this case, it has been referred to the undersigned for report and recommendation to United States District Judge Sharion Aycock.

## PROCEDURAL HISTORY

On June 14, 2006, Billy Mitchell Moore filed his Title II application, alleging the onset of his disability was May 19, 2006. Tr. 13. The claim was denied on November 7, 2006 and on reconsideration on March 20, 2007. *Id*. The plaintiff timely filed a request for a hearing before an administrative law judge [ALJ] on May 24, 2007, and the hearing was held on April 16, 2009. *Id*. The ALJ denied the claim on May 19, 2009. Tr. 13-25. The Appeals Council denied Moore's request for review, Tr. 1-4, making the ALJ's ruling the final decision of the Commissioner, and it is now ripe for the court's review.

## FACTS

Moore was born on October 31, 1962 and was forty-six years old at the time of the ALJ

hearing, which is classified as younger age. Tr. 23; 48. He has a college degree, Tr. 30, and his past relevant work was that of as band director of junior high and high school bands. Tr. 48. Moore alleged disability due to sleep apnea, diabetes, high blood pressure, thyroid, depression, asthma, high cholesterol and problems with his right hand. Tr. 133.

The ALJ determined that although the plaintiff's disorder of the right wrist, hypertension, asthma, diabetes, sleep apnea, hypothyroidism, obesity and depression were severe impairments, Tr. 15., they did not meet, either in combination or individually, any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19-20. The ALJ found that Moore retained the residual functional capacity [RFC] to lift/carry and push/pull a maximum of ten pounds occasionally and five pounds frequently; stand/walk a total of six hours of an eight-hour work day and sit at total of six hours in an eight-hour work day. Tr. 20. In addition, Moore could occasionally climb stairs, balance, stoop, crouch, kneel or crawl, but never climb ropes, scaffolds, or ladders, and could not engage in work which requires repetitive handling of his right hand or lifting more than five pounds with his right hand occasionally. Tr. 20. Moore was restricted from exposure to chemicals, dust, noise, fumes and humidity. Tr. 21. Moore was also unable to perform jobs that demanded attention to details, complicated instructions or job tasks; jobs that require him to work at a production rate pace and jobs that require him to work with the general public. Tr. 21. Finally, Moore could maintain attention and concentration for two hours at a time, adapt to basic changes in the workplace, and accept supervision on a basic level. Tr. 21.

After consulting the vocational expert [VE], the ALJ determined that Moore was unable to return to his past relevant work. Considering his age, education, work experience and RFC,

the ALJ determined that Moore could perform jobs such as surveillance monitor, teacher's aide or information clerk, which exist in the national economy in significant numbers. Tr. 24. Consequently, the ALJ found that Moore was not disabled.

**DISCUSSION**

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical

---

[1]*See* 20 C.F.R. §§ 404.1520 (2009).

[2]*Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[3]20 C.F.R. §§ 404.1520(b)(2009).

[4]20 C.F.R. §§ 404.1520(c)(2009).

[5]20 C.F.R. § 404.1520(d)(2009). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525 (2009).

and mental demands of his past relevant work.[6] At step five the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

Moore contends that the Commissioner erred by failing (a) to accord Moore's treating physician's opinion the proper weight, (b) to review the evidence presented to the Appeals Council; and (b) to consider the cumulative effects of his various ailments.

<u>Failure to Give Moore's Treating Physician Controlling Weight</u>

Moore argued that the ALJ failed to afford his treating physician, Dr. Carl Welch, the

---

[6] 20 C.F.R. §§ 404.1520(e); 1520(f)(2009).

[7] 20 C.F.R §§ 404.1520(g)(1)(2009).

[8] *Muse*, 925 F.2d at 789.

4

proper weight. Docket # 8, pp. 3-4. The ALJ discounted Dr. Welch's opinion because his treatment notes concerned only routine medical care and conservative treatment, the records demonstrated only two visits since the disability onset date, and Dr. Welch's opinion regarding disability was based primarily on Moore's depression, an area outside his medical expertise. Tr. 15-16. In addition, the doctor's letter dated April 13, 2009 stated that his examinations of Moore did not reveal "any severe physical deficiencies." Tr. 16.

The ALJ may discount a treating physician's opinion when good cause is shown, such as when the physician's opinion "is conclusory, is unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). The Fifth Circuit has very clearly stated the approach an ALJ must take in according weight to a treating physician's opinion:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)(emphasis in original). Under 20 C.F.R. § 404.1527(d) the factors to be considered in assessing the opinion of the *treating* physician include such common sense considerations as the length of the treatment relationship, frequency of examination by the physician, the nature and extent of the treatment relationship and the "supportability" of a medical source's opinion by relevant evidence. Section 404.1527(d)(3) specifically defines "supportability" by detailing the approach that should be taken with non-examining medical sources whose opinions are not founded upon direct knowledge of a particular claimant's case:

5

> The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

An ALJ is required by federal regulation to consider six factors when determining whether or not the treating physician opinion is given controlling weight. 20 C.F.R. § 404.1527(d). The ALJ did evaluate Dr. Welch's opinion according to those factors. He noted that Dr. Welch saw Moore for a number of years and treated him for a variety of maladies. Tr. 15. In addition, he observed that Dr. Welch's treatment of Moore was routine in nature and "reflect[ed] routine and conservative treatment." Tr. 16. Also, the ALJ recognized that Dr. Welch's opinion of Moore's disability was related to Moore's mental health, which was outside of Dr. Welch's area of expertise. Finally, the evidence regarding Dr. Welch's treatment submitted to the ALJ did not include any treatment notes after July 6, 2006, which the ALJ found to be an important factor in weighing his opinion. Tr. 16. Accordingly, the undersigned finds that the ALJ met the applicable legal standards for evaluation of a medical opinion.

<u>Failure of the Appeals Council to Review the Newly Presented Evidence</u>

Moore argues that there is new and material evidence supporting his claim of disability that was unavailable at the time of the hearing, and the court should remand the case to the Commissioner to hear the new evidence and then either modify or affirm his prior decision.

42 U.S.C. § 405(g)[9]. Docket #8, p. 4. Moore argues that the December 14, 2009 report of C. Lamar Crocker, a certified rehabilitation consultant, constitutes new and material evidence. Docket #8, pp. 5-6. Dr. Crocker's report was attached to Moore's brief and is not a part of the administrative record. Additionally, Moore argues that Dr. Welch's letter dated June 26, 2009 was evidence of Moore's treatment by Dr. Welch and supports his medical opinion of disability. Docket # 8, p. 4. This letter, Tr. 400-01, was submitted only after an adverse decision by the ALJ on appeal to the Appeals Council, and it was considered by the Appeals Council in its review. Tr. 4.

This court does not make factual findings regarding new medical evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989) (citing *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)). The district court's role is limited to determining whether there is new evidence that is material and, if so, whether there is good cause for failing to incorporate it into the record in the prior proceeding. *Id*.

First, Mr. Crocker's letter does not present any new evidence that is material consequently justifying remand. *See Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (justification for remand requires a showing that evidence is "new" and "material" as well as a

---

[9] The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based. 42 U.S.C. § 405(g)(2009).

showing of "good cause" for failing to provide the evidence at the original proceeding). Crocker's letter recites information that was contained in the medical records that the ALJ reviewed and the plaintiff's own stated limitations – information that does not constitute "new" evidence. Docket #8, pp.10-12. Second, Crocker's opinion that Moore's pace, persistence and concentration are severely affected is more limiting than the opinions of Dr. Savell and Dr. Kourany, which the ALJ accorded great weight. But Crocker's opinion would be given less weight than Drs. Savell and Kourany because they are specialists; Mr. Crocker is not a mental health professional. *See* 20 C.F.R. §404.1527(d)(5)(2009). In addition, Crocker's opinions regarding Moore's disability status and the availability of work available in Mississippi for Moore are of little value because those conclusory statements are determinations that are reserved to the Commissioner. *See* 20 C.F.R. §404.1527(e)(2009) Finally, Moore has not demonstrated good cause for failing to present this evidence in the original proceeding – the fact that the evaluation was conducted after the ALJ's determination and the Appeals Council's ruling is not good cause without a demonstration of materiality.

The June 26, 2009 letter from Dr. Welch that was submitted to the Appeals Council is, on the other hand, evidence that became part of Moore's record, which is now being reviewed by this court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). It is the court's obligation to examine whether the Appeals Council correctly concluded that the ALJ's decision was supported by substantial evidence in light of the evidence presented to the Appeals Council. The court concludes, however, that the letter does not present any new, substantial evidence that contradicts the ALJ's determination. Dr. Welch responded to and disagreed with the ALJ's conclusions, but he did not provide any new, objective evidence. A recitation of dates of office

8

visits does not in and of itself indicate substantiality. Moore offers no explanation as to why those treatment records were not presented to the ALJ *or even to the Appeals Council*. Those treatment records have yet to be offered in support of plaintiff's claims or Dr. Welch's otherwise unsupported opinions. Dr. Welch's June 26, 2009 letter to the Appeals Council does not demonstrate that Moore was prejudiced, and does not justify remand. *See Newton v. Apfel*. 209 F.3d 448, 458 (5th Cir. 2000) (reversal of the decision is appropriate if the claimant demonstrates prejudice).

Failure to Consider the Cumulative Effects of Moore's Various Ailments

Moore contends that the ALJ committed reversible error by not considering the cumulative effect of his impairments. Docket # 8, p. 6. To the contrary, the ALJ specifically found first that Moore "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)." Tr. 19. Only then did he go on and carefully articulate how each of Moore's individual impairments failed to meet the described listings as demonstrated by the lack of medical evidence required to meet the listing. Tr. 19-20. Further, the ALJ applied the correct legal standard in analyzing Moore's depression.[10] Finally, he found that the medical

---

[10] The ALJ is required to analyze Moore's depression according to a special procedure, known as a "technique," 20 C.F.R. §§ 404.1520a(2009), under which he or she analyzes the claimant's symptoms, findings and functional limitations in a consistent manner. *See* SOCIAL SECURITY DISABILITY LAW AND PROCEDURE § 5:38, p. 508. The technique assesses potential impairments in four areas of work related function including (1) activities of daily living, (2) social functioning, (3) concentration, persistence of pace, and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3). The ALJ performed this required analysis when he reviewed the State Agency psychiatrist's findings that Moore did not show marked restriction in two of the four areas of functioning assessed under the "technique" and that Moore had had no episodes of decompensation. Tr. 20.

evidence establishes that Moore's diabetes, asthma, hypertension, hypothyroidism and sleep apnea were well controlled with his routine and conservative treatment. Tr. 23. The ALJ's thorough review of the medical records and his notation that Moore's conditions were well controlled with routine treatments demonstrates that he considered his impairments individually and in combination. The undersigned respectfully recommends that the Commissioner's decision denying benefits to the claimant Billy Mitchell Moore be affirmed.

The parties are referred to 28 U.S.C. §636(b)(1)(B), Fed. R. Civ. P. 72(b) and L.U.Civ.R. 72(a)(3) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen days of this date. A party's failure to file written objections to the proposed findings, conclusions and recommendation contained herein within ten days after being served with a copy of this report and recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (footnotes omitted).

Respectfully submitted, this the 1st day of July, 2010.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE